SV:ler                  F-1896                  #43210

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## NORTHERN DIVISION

| | |
|---|---|
| STARNET INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Court No.: 1:08 CV 01828 |
| | ) |
| SOUTH WEST INDUSTRIES, INC. d/b/a | ) |
| ANDERSON ELEVATOR COMPANY; and | ) |
| CHICAGO TRANSIT AUTHORITY, | ) |
| | ) |
| Defendants. | ) |

### ANSWER TO COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Defendant, SOUTH WEST INDUSTRIES, INC. d/b/a ANDERSON ELEVATOR COMPANY by and through their attorneys GARRETSON SANTORA URGO & NUGENT, LTD. and for its answer to the complaint, pleads as follows

1. Plaintiff StarNet is a Connecticut insurance company, with its principal place of business at 475 Steamboat Road, Greenwich, CT 06830, issuing insurance policies in Illinois pursuant to the Illinois Insurance Code.

**ANSWER:** Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the complaint.

2. Defendant SWI is an Illinois corporation, with its principal place of business at 2801 19th Ave. Broadview, IL 60155.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 2 of the complaint.

3. Defendant CTA is an Illinois governmental agency, with its principal place of business at 567 W. Lake St., Chicago, IL 60661.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 3 of the complaint.

4. This Court has jurisdiction over this matter under 28 U.S.C. § 1332 based on diversity of citizenship of the parties and the matter in controversy exceeds $75,000.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 4 of the complaint.

## LEWANDOWSKI LAWSUIT

5. On October 24, 2006, a lawsuit was filed in the Circuit Court of Cook County, Illinois under the caption, *Lawrence Lewandowski v. South West Industries, Inc., et al.,* Case No. 2006 L 011181 (the "Lewandowski Lawsuit"). A true and correct copy of the First Amended Complaint filed in the Lewandowski Lawsuit is attached hereto as Exhibit "A".

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 5 of the complaint.

6. SWI was served in the Lewandowski Lawsuit on or about November 9, 2006.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 6 of the complaint.

7. Count I of the Lewandowski Lawsuit includes the following allegations:

   a. On or about July 5, 2006, LAWRENCE was employed by the Chicago Transit Authority (CTA).

b.  On and prior to July 5, 2006, SOUTH WEST had a contract with the CTA to inspect, maintain and/or repair elevators, including an elevator located at the Pulaski station of the CTA's Orange Line ("the elevator"), at or near 5106 S. Pulaski Road, Chicago, Illinois.

c.  On or about July 5, 2006, LAWRENCE was a passenger on the elevator.

d.  On or about July 5, 2006, the elevator's cables snapped, separated or otherwise failed, causing the elevator to fall.

e.  On or about July 5, 2006, no brake, governor or other device prevented the elevator from free falling.

f.  As a proximate result of the elevator's fall, LAWRENCE was injured.

g.  At the time and place alleged, SOUTH WEST was negligent in one or more of the following respects:

   1.  Installing unsafe, inadequate or otherwise defective cables; or

   2.  Failing to adequately inspect or maintain the cables; or

   3.  Failing to repair the elevator or cables though they knew, or should have known, they were unsafe; or

   4.  Failing to install properly working brakes, a governor or other safety device to prevent the elevator's free fall; or

   5.  Failing to adequately inspect or maintain the brakes, governor or other safety device; or

   6.  Failing to repair the brakes, governor or other safety device though they knew, or should have known, that they were malfunctioning or were otherwise unsafe; or

3

      7. Was otherwise negligent in its installation, inspection and/or maintenance of the elevator.

  h. As a proximate result of one or more of the foregoing negligent actions and/or omissions LAWRENCE was injured; has endured and will in the future endure pain and suffering; has become disfigured and disabled; has suffered the loss of the enjoyment of a normal life; has incurred and will in the future incur expenses for medical and rehabilitative care; has suffered a loss of wages; and has been damaged in his capacity to earn a living.

**ANSWER:** Defendant SOUTHWEST admits only that Count I of the Lewandowski Lawsuit includes the allegations contained in paragraph 7 and subparagraphs a-h and 1-7 of the complaint.

  8. Count II of the Lewandowski Lawsuit includes the following allegations:

    a. On or about July 5, 2006, LAWRENCE was employed by the Chicago Transit Authority (CTA).

    b. On and prior to July 5, 2006, SOUTH WEST assembled and installed elevators and their components.

    c. Prior to July 5, 2006, SOUTH WEST installed an elevator at the CTA's Pulaski Station of the Orange Line located at or near 5106 Pulaski Road, Chicago, Illinois.

    d. On and prior to July 5, 2006, SOUTH WEST assembled the components of the elevator.

    e. One and prior to July 5, 2006, SOUTH WEST procured the cables for the elevator.

    f. On and prior to July 5, 2006, SOUTH WEST installed the cables for the elevator.

    g. On and prior to July 5, 2006, SOUTH WEST was responsible for the installation of brakes or governors for the elevator.

h. On or about July 5, 2006, LAWRENCE was a passenger on the elevator.

i. On or about July 5, 2006, the elevator's cables snapped, separated or otherwise failed, causing the elevator to fall.

j. On or about July 5, 2006, no brake, governor or other device prevented the elevator from free falling.

k. As a proximate result of the elevator's fall, LAWRENCE was injured.

l. At the time and place alleged, the elevator was unreasonably dangerous in one or more of the following respects:

   1. It had inadequate cables; or
   2. Its cables were inadequately maintained and/or repaired; or
   3. It lacked adequate brakes; or
   4. Its brakes were inadequately maintained and/or repaired; or
   5. It lacked a governor or similar safety device; or
   6. Its governor or otherwise similar safety was inadequately maintained and/or repaired.

m. The aforesaid defective and unreasonably dangerous conditions were present at the time the elevator left the control of SOUTH WEST.

n. As a proximate result of . . .one or more of the foregoing unreasonably dangerous conditions LAWRENCE was injured; has endured and will in the future endure pain and suffering; has become disfigured and disabled; has suffered the loss of the enjoyment of a normal life; has incurred and will incur expenses for future medical and rehabilitative care; has suffered a loss of wages; and has been damaged in his capacity to earn a living.

**ANSWER:** Defendant SOUTHWEST admits only that Count II of the Lewandowski Lawsuit includes the allegations contained in paragraph 8 and subparagraphs a-l and 1-6 of the complaint.

9. Counts V & VI of the Lewandowski Lawsuit include the following additional allegations;

   a. At all times alleged BERNICE was the wife of LAWRENCE.

   b. As a proximate result of one or more of the foregoing negligent acts and/or omissions, BERNICE has suffered a loss of the society, companionship and support of her husband, LAWRENCE.

**ANSWER:** Defendant SOUTHWEST admits only that Count V & VI of the Lewandowski Lawsuit includes the allegations contained in paragraph 9 and subparagraphs a-b of the complaint.

## SOUTH WEST'S THIRD-PARTY COMPLAINT

10. On October 24, 2007, SWI filed a Third-Party Complaint in the Lewandowski Lawsuit against the CTA ("SWI Complaint"). A true and correct copy of the SWI Complaint is attached hereto as Exhibit "B".

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 10 of the complaint.

11. The CTA was served with the SWI Complaint on October 30, 2007.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 11 of the complaint.

12. Count I of the SWI Complaint includes the following allegations:

   a. At the date, time and place of the aforesaid incident, CTA was charged with the management, operation, and control of the aforementioned property, and as such was a common carrier with respect to the elevator located therein, and had the duty to use

6

    the highest degree of care consistent with the management, operation, and control of said property to avoid injury to those on the premises.

b. Notwithstanding said duty, CTA acted or failed to act in one or more of the following ways that amounted to negligent or careless conduct:

    1. failed to maintain the elevator in good and proper condition when it knew or should have known in the exercise of the highest degree of care and caution that the elevator created a situation of imminent danger for persons, such as the plaintiff;

    2. allowed said elevator to fall into a state of disrepair for an unreasonable length of time when it knew or should have known in the exercise of the highest degree of case and caution that such condition created a situation of immanent danger for persons, such as plaintiff;

    3. failed to notify SOUTH WEST of the alleged defective condition of the elevator prior to the date of the alleged incident sot that SOUTH WEST could come to the premises and repair the alleged condition, when it knew or should have known in the exercise of the highest degree of care and caution that such condition created a situation of imminent danger for persons, such as the plaintiff;

    4. failed to warn passengers and other intended users of the subject elevator of the alleged defective condition of the elevator when it knew or should have known in the exercise of the highest degree of

                care and caution that such condition created a situation of imminent danger for persons, such as the plaintiff;

        5. failed to have a Type A safety installed in the elevator when the station was built, which is the proper safety for an elevator that is under 100 feet;

        6. failed to keep the hoistway/pit of the elevator free from chemicals such as those used to remove graffiti, and free from water vapor, salt, ice, water and rain, which caused the cables to deteriorate.

    c. SOUTH WEST denies all liability as alleged by the plaintiff and if it is found that SOUTH WEST is liable to the plaintiff's, one or more of the foregoing acts or omissions on the part of third-party defendant contributed in whole or in part to proximately cause the injuries alleged to have been sustained by the plaintiffs.

    d. In the event that the plaintiffs recover a judgment from SOUTH WEST, then pursuant to 740 ILCS 100/2, SOUTH WEST is entitled to judgment by way of contribution against third-party defendant for that portion of said judgment in excess of SOUTH WEST 'S pro rata share of liability to the full extent allowed by law.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 12 and subparagraphs a-b and 1-6 of the complaint.

13.     Count II of the SWI Complaint includes the following allegations;

    a. That on or about July 6, 2006, the third-party defendant, CTA, and its duly authorized agents or servants had exclusive actual physical possession of the elevator and all of its component parts.

b. That third-party defendant, CTA, was charged with the management, operation, and control of the aforementioned elevator and all of its component parts.

c. That after the plaintiff, LAWRENCE LEWANDOWSKI, was involved in the incident of July 6, 2006, third-party defendant, CTA, knew or should have known that the elevator and its component parts had to be maintained for inspection and preservation.

d. That third-party defendant, CTA, had a duty to maintain, preserve and secure the elevator and its component parts and keep them free from water, ice, salt, chemicals and debris.

e. That, notwithstanding said duties, third-party defendant, CTA, allowed water, ice, slat, chemicals and debris to build up and sit in the pit/hoist way causing the hoist ropes and other component parts to rust and further deteriorate.

f. That third-party defendant, CTA, allowed the elevator and its component parts to sit in ice, water, chemicals and debris for a significant and unreasonable length of time which caused further deterioration to the evidence which has impaired defendant SOUTH WEST'S ability to defend itself by an examination of the allegedly defective product, hoist ropes, elevator and its component parts.

g. SOUTH WEST denies all liability as alleged by the plaintiff and if it is found that SOUTH WEST is liable to the plaintiffs, one or more of the foregoing acts or omissions on the part of third-party defendant, CTA, contributed in whole or in part to proximately cause the injuries alleged to have been sustained by the plaintiffs.

h. In the event that the plaintiffs recover a judgment from SOUTH WEST, then pursuant to 740 ILCS 100/2, SOUTH WEST is entitled to judgment by way of

9

contribution against third-party defendant, CTA, for that portion of said judgment in excess of SOUTH WEST'S pro rata share of liability to the full extent allowed by law.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 13 and subparagraphs a-h of the complaint.

## STARNET POLICY

14. StarNet issued Policy No.: JMS0000171-00 (the "StarNet Policy") to SWI. A true and correct copy of the StarNet Policy is attached hereto as Exhibit "C".

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 14 of the complaint.

15. The StarNet Policy is effective from March 31, 2006 to March 31, 2007.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 15 of the complaint.

16. The Each Occurrence Limit of the StarNet Policy is $1,000,000.00, and the General Aggregate Limit is $3,000,000.00.

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 16 of the complaint.

17. The StarNet Policy contains the following insuring agreement:

   1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defendant the insured against any "suit" seeking those damages. However, we will have no duty to defendant the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result . . .

b. This insurance applies to "bodily injury" and "property damage" only if:

1. The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
2. The "bodily injury" or "property damage" occurs during the policy period;

**ANSWER:** Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 subparagraphs a-b and 1-2.

18. The StarNet Policy contains the following exclusion:

e. Employer's Liability

"Bodily injury" to:

1. An "employee" of the insured arising out of and in the course of:

   a. Employment by the insured; or

   b. Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract"

**ANSWER:** Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 subparagraphs e and 1-2 and a-b.

## GROUNDS FOR DECLARATORY JUDGMENT

19. SWI and CTA entered into an agreement on or around February 8, 2005, in which SWI agreed to inspect, service, maintain and repair elevators for the CTA. A true and correct copy of the agreement is attached hereto as Exhibit "D".

**ANSWER:** Defendant SOUTHWEST admits the allegations contained in paragraph 19 of the complaint.

20. At the time of the injury to Lewandowski alleged in the Lewandowski Lawsuit, Lewandowski was riding an elevator at the Pulaski station of the CTA's Orange Line.

**ANSWER:** Defendant SOUTHWEST is admits the allegations contained in paragraph 20 of the complaint.

21. Upon information and belief, Lewandowski was an employee of the CTA acting within the course and scope of his employment with the CTA on the day and time he was allegedly injured.

**ANSWER:** Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21.

22. The "Employer's Liability" exclusion applies to exclude any coverage or potential coverage for the CTA in the Lewandowski Lawsuit.

**ANSWER:** Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the complaint.

23. As a result of the application of the "Employer's Liability" exclusion, StarNet has no duty to defendant the CTA in connection with the Lewandowski Lawsuit.

**ANSWER:**  Defendant SOUTHWEST is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the complaint.

Respectfully submitted,

s/ Michael J. Urgo Jr.

One of the Attorneys for the Defendant SouthWest Industries d/b/a Anderson Elevator Company

Michael J. Urgo, Jr.
Garretson Santora Urgo & Nugent Ltd.
2 North LaSalle #1100
Chicago, Illinois 60602
312.263.6635
312,263,1329(fax)
ID No.06181483