UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STARNET INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 08 C 1828 |
| v. | ) | |
| | ) | Judge Joan B. Gottschall |
| SOUTH WEST INDUSTRIES, INC. d/b/a | ) | |
| ANDERSON ELEVATOR COMPANY, | ) | |
| AND CHICAGO TRANSIT AUTHORITY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This is an insurance coverage dispute. Plaintiff StarNet Insurance Company ("StarNet") filed a two-count amended complaint (the "Complaint") for declaratory judgment against Defendants South West Industries, Inc. d/b/a Anderson Elevator Company ("SWI"), and the Chicago Transit Authority (the "CTA") (collectively, "Defendants") asking the court to construe a comprehensive general liability contract (the "CGL") StarNet entered into with SWI. StarNet and the CTA both move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; SWI moves for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(c). There are no disputed issues of material fact. The court resolves these dispositive motions jointly in this memorandum opinion and order.

### I. BACKGROUND[1]

On February 8, 2005 SWI contracted with the CTA to maintain, service and repair elevators owned by and located on CTA property. Am. Compl., Ex. G (the "Elevator

---

[1] As no material facts are in dispute, the background is taken liberally from the pleadings, StarNet's Statement of Material Facts or the CTA's Statement of Material Facts, and exhibits thereto.

Agreement"). The Elevator Agreement required SWI to purchase commercial general liability insurance that would cover, *inter alia*, personal injury liability "with employee and contractual exclusions deleted." CTA Stmt. of Facts 12. SWI subsequently purchased the CGL from StarNet effective March 31, 2006 through March 31, 2007. On October 24, 2006 CTA employee Lawrence Lewandowski filed a lawsuit in the Circuit Court of Cook County (the "Lewandowski Suit") seeking recovery in tort (sounding in negligence and strict liability) from, among others, SWI, Professional Elevator Services, Inc., and Brugg Wire Rope, LLC (collectively the "Third-Party Plaintiffs"), who subsequently filed separate third-party complaints (the "Third-Party Complaints") against the CTA and others. *See* StarNet's Statement of Material Facts ("StarNet Stmt."), Exs. B-D. The Third-Party Complaints bring claims against the CTA for negligence and spoliation of evidence. *Id.*

## II. LEGAL STANDARD

Summary judgment is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008); *see also Bassiori v. F.B.I.*, 436 F.3d 712, 721 (7th Cir. 2006) (applying the same standard to cross-motions for summary judgment).

On a motion for judgment on the pleadings, the court construes all well-pled facts in favor of the non-moving party and limits its analysis to the content of the pleadings. *Alexander v. City of Chi.*, 994 F.2d 333, 336 (7th Cir.1993).

### III. ANALYSIS

#### A. Applicability of the CGL's Employer's Liability Exclusion.

The CGL incorporates an exclusion precluding coverage for bodily injury to employees of "the insured" that arises within the scope of employment. *See* CGL 20, ¶ 2.e.[2] Such exclusions are commonly included in commercial general liability policies, as injuries to employees occurring within the scope of employment are usually covered by workers' compensation insurance. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Beautiful Signs, Inc.*, 496 N.E.2d 1229, 1230-31 (Ill. App. Ct. 1986). Pertinently, the CGL's employer's liability exclusion does not apply to liability "assumed by the insured under an 'insured contract.'" CGL 20, ¶ 2.e.[3] The CGL defines "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured." *Id.* at 19.

---

[2] For convenience the court cites to the provisions of the CGL by the page number reflected in the electronic filing system header stamped on Exhibit F to StarNet's Statement of Material Facts. StarNet Stmt., Ex. F (Doc. No. 25-6). Where appropriate the court will additionally specify the relevant paragraph number.

[3] The CGL paragraph 2, "Exclusions," provides "this insurance does not apply to . . .":

> "Bodily injury" to:
>
> (1) An "employee" of the insured arising out of and in the course of:
>
> > (a) Employment by the insured; or
> >
> > (b) Performing duties related to the conduct of the insured's business; or
>
> > \*   \*   \*
>
> This exclusion does not apply to liability assumed by the insured under an "insured contract."

3

StarNet contends that this exclusion applies to CTA here because it is undisputed that (1) Lewandowski was an employee of the CTA, (2) Lewandowski was injured within the scope of that employment, and (3) the CTA is "an insured" under the CGL. Consequently, StarNet maintains that the CTA is "the insured" when it seeks coverage under the policy, and therefore the employer's liability exclusion operates to preclude coverage here. In opposition, the Defendants argue that the exclusion applies only to SWI because "the insured" means SWI, the party that procured the CGL. From this contention Defendants reason that the CGL covers the CTA for any liability arising from the Lewandowski Lawsuit because, by its terms, the exclusion does not apply to "liability assumed by the insured under an 'insured contract.'" *Id*. The parties agree that the CTA and SWI entered into a contract that qualifies as an "insured contract" under the terms of the CGL. The CTA additionally urges the court to construe the CGL in light of the Elevator Agreement, which required SWI to procure commercial general liability coverage for the CTA that deleted the employee liability exclusion that StarNet now seeks to enforce.

This dispute ultimately turns on the meaning of "the insured." The CGL defines "insured" as "any person or organization qualifying as such under Section II – Who Is An Insured;" all the parties agree that the CTA is "an insured." *Id.* at 19. It appears plain to the court that if the CTA is *an* insured and "insured" is explicitly defined as "any . . . organization" that is "*an* insured," then the CTA is the "insured" under the clear terms of the CGL where, as here, the CTA is the entity "for whom coverage is sought." *See Brile v. Estate of Brile*, 695 N.E.2d 1309, 1314 (Ill. App. Ct. 1998).

---

CGL 20, ¶ 2.e.

The Defendants' alternative construction of the contract cannot be correct for a number of reasons. Most obviously, if the CTA is not "the insured" under this exception, then it is not "the insured" under the entire CGL, and thus would *not* be covered. The CGL provides, in pertinent part – one *paragraph* above the Employer's Liability exclusion – StarNet "will pay those sums that *the* insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . ." *Id*. at 19, ¶ 1.a (emphasis added). Terms used consistently in a contract are given consistent meanings. *See AGT Crunch Chi., LLC v. 939 N. Ave. Collection, LLC*, No. 07 C 2986, 2008 WL 753951, at *3 (N.D. Ill. Mar. 18, 2008) (citing *Nielson v. Piper, Jaffray, & Hopwood, Inc.*, 66 F.3d 145, 148 (7th Cir.1995) (opining on Illinois standards for contract interpretation)). The Defendants have not set forth any authority that would permit the court to read "the insured" in two distinct ways in the same *section* of the CGL and thereby find that the CGL covers the CTA as an insured. Indeed, the only reading of the CGL that provides any coverage to the CTA as an insured – a status the CTA repeatedly insists it is invoking – also triggers the Employer's Liability exception, which nullifies the CTA's coverage on the facts alleged in the Lewandowski Lawsuit and the related Third-Party Complaints.

Moreover, Defendants' position appears even less persuasive when viewed in light of the CGL provision that states: "throughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations . . ." *Id*. *A fortiori*, had the contract drafters intended for the exclusion to apply to SWI – the "Named Insured" – only, then it would read: "This insurance does not apply to . . . An 'employee' of [yours]

5

arising out of and in the course of . . .[e]mployment by [you].'" *Id*. The parties are aware, however, that the CGL is not so drafted.[4]

Finally, while it appears to the court that the Elevator Agreement required SWI to procure insurance for the CTA *without* the Employer's Liability Exclusion – and thus the clear terms of the CGL run against the intent of SWI and the CTA embodied in the Elevator Agreement – the Elevator Agreement can have no effect on the interpretation of the CGL because StarNet was not a party to it and the language in the CGL is clear and unambiguous. *See Virginia Surety Co., Inc. v. Northern Ins. Co. of N.Y.*, 866 N.E.2d 149, 153 (Ill. 2007) ("The cardinal rule [of contract interpretation] is to give effect to the parties' intent, which is to be discerned from the contract language. If the contract language is unambiguous, it should be given its plain and ordinary meaning."). Accordingly, because the terms of the CGL are clear, legal doctrines mandating that ambiguity in an insurance contract be resolved against the insurance company and in favor of the insured are inapplicable. *See id.*

Accordingly, the clear terms of the Employer's Liability Exclusion operate here to deny coverage to the CTA as an insured.

### B. Does the CGL Require StarNet to Defend the CTA as SWI's Indemnitee?

SWI agreed to indemnify the CTA pursuant to an indemnity provision in the Elevator Agreement (the "Indemnity Clause").[5] Under Illinois law, however, a promise

---

[4] As the court finds the terms of the CGL unambiguous, the court rejects Defendants' position that their reading of the CGL should be adopted because ambiguous language in a contract must be construed against the drafter. *See, e.g., Am. States Ins. v. Koloms*, 687 N.E.2d 72, 75 (Ill. 1997).

[5] The indemnity clause in relevant part reads as follows:

> [SWI] shall indemnify and hold harmless to the maximum extent permitted by law the [CTA], its agents, officials and employees against

6

to indemnify "another person from that person's own negligence is void as against public policy and wholly unenforceable" where the provision is part of an agreement, *inter alia*, "for the repair or maintenance of a building." *See* Illinois Construction Contract Indemnification for Negligence Act, 740 Ill. Comp. Stat. 35/1 *et seq.* (the "Act"). StarNet concedes that the Indemnity Clause does not run afoul of the Act on its face because it purports to indemnify the CTA only for SWI's negligence – not CTA's – but urges that the provision is unenforceable because it violates the Act as applied to the circumstances here pursuant to *Jandrisits v. Village of River Grove*, 669 N.E.2d 1166 (Ill. App. Ct. 1996). SWI and the CTA argue to the contrary that (1) the Act is inapplicable because an elevator maintenance agreement is not subject to the Act, (2) the Indemnity Clause is valid because by its terms it applies only to the extent permitted by law, and,

---

> all injuries, death, losses . . . and expenses which may, in any manner, accrue against the [CTA] as a consequence of the award or performance of this Contract. This indemnity applies: (a) whether any loss for which the [CTA] seeks indemnity shall be caused or contributed to by the sole or partial negligent act or omission of [SWI] or [SWI]'s employees; and (b) whether any of the losses for which the [CTA] seeks indemnity shall be caused or contributed to by the sole or partial negligence or omission of [SWI]'s subcontractors or their employees. SWI shall, at SWI's own expense, appear, defend and pay all charges of attorneys and all costs and other expenses arising in connection with this indemnity. If any judgment shall be rendered against the [CTA], [SWI] shall at Contractor's own expense satisfy and discharge the judgment. If indemnity pursuant to this subparagraph shall not be permitted by the applicable law, then, to the maximum extent permitted by law, [SWI] shall make full contribution to the [CTA] for its percentage share of any liability that is attributable to [SWI]'s acts or omissions. Contractor expressly waives any legal limitations on its liability to the [CTA] for contribution, including but not limited to limitations related to the payment of workers compensation benefits. The [SWI] expressly understands and agrees that any performance-payment bond or insurance protection required by this Contract or otherwise provided by [SWI], shall in no way limit the responsibility to indemnify and defend the [CTA] pursuant to this Section. The indemnifications contained herein shall survive the termination of this Agreement.

Am. Compl., Ex. G 42.

7

finally, (3) the question of whether StarNet must indemnify the CTA pursuant to the CGL is premature.

The Act applies to the Elevator Agreement. While none of the parties cite authority that specifically enforces the Act against an elevator maintenance agreement, the Act covers contracts for the "repair or maintenance of a building [or] structure . . ." and SWI characterizes the Elevator Agreement as one for "the maintenance, service, and repair of various hydraulic and electric elevators owned by and located on CTA property," SWI Mem. 2, a description that the CTA has not disputed. The Elevator Agreement, then, is subject to the Act. *See Doran v. Corn Prods.-U.S.*, 776 F. Supp. 368, 373-74 (N.D. Ill. 1991) (the Act applies to a building's electrical maintenance agreement under the plain language of the Act). The CTA's reliance on *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building. Corp.*, 70 N.E.2d 604 (Ill. 1946), a case predating the passage of the Act by twenty-five years, for the proposition that an elevator maintenance contract indemnifying another party for its own negligence would be enforceable if clearly drafted, *see* CTA Mem. 8, is inapposite because that holding was superseded by the passage of the Act. *See Duffy v. Poulos Bros. Const. Co.*, 587 N.E.2d 1038 (Ill. App. Ct. 1991) (finding that the *Westinghouse* holding "was rendered a nullity" in contexts where the Act applies).

But, as StarNet concedes, this finding does not end the inquiry because the Indemnity Clause is facially valid under the Act. The Defendants invoke the Indemnity Clause to trigger a provision in the CGL whereby StarNet will defend an indemnitee (the CTA) of the insured (here, SWI) if *all* of a series of conditions are met. StarNet argues that the Defendants cannot satisfy the provision in paragraph a, which provides:

8

> The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract."

CGL 26 ¶ 2.a. Satisfaction of this condition is impossible according to StarNet, because the Indemnity Clause does not apply to the Third-Party Complaints filed against the CTA and would be void under the Act if it did. Again, despite Defendants' protestations to the contrary, there is no genuine dispute that the Elevator Agreement is an "insured contract;" the question is whether the lawsuit against the CTA seeks damages for which SWI *has assumed liability*. *Id*. The crux of StarNet's argument is that SWI has not assumed the CTA's liability in the "'suit' against the indemnitee" because the Third-Party Complaints seek contribution for the CTA's own negligence, something that the Indemnity Clause cannot cover because the Act forbids it. *Id*.

The Third-Party Complaints are the "'suit' against the indemnitee" out of which the CTA's liability arises. These complaints seek contribution for the CTA's *negligence* or for the CTA's *negligent* spoliation of evidence. *See, e.g.*, Def. Southwest Indus., Inc.'s Third Party Compl. For Contribution (StarNet 56.1 Ex. B), Count I ("Negligence by a Common Carrier") ¶ 4 ("CTA acted or failed to act in one or more of the following ways that amounted to negligent or careless conduct"). The Indemnity Clause, however, does not indemnify the CTA for its own negligence – as all the parties agree – but rather for SWI's, *see supra* n. 3; and even if it did, the Act would nullify it. *See Jandrisits*, 669 N.E.2d. at 1170. As the Indemnity Clause does not indemnify the CTA for the liability arising out of the Third-Party Complaints and, correspondingly, SWI has not "assumed the liability" of "an indemnitee" within the meaning of the CGL, all the conditions to trigger StarNet's defense of the CTA cannot be satisfied. StarNet therefore has no duty

to defend the CTA under the Supplementary Payments provision of the CGL. *See* CGL 26 ¶ 2.

The holding in *Jandrisits* concurs with this result; there the Illinois appellate court upheld a trial court's finding that an indemnity agreement was void under the Act as applied because the complaint against the purported indemnitee sought damages for the indemnitee's own negligence. *See Jandrisits*, 669 N.E.2d at 1170 (finding an indemnity agreement void under the Act because "the allegations of the complaint against the [indemnitee] impose liability directly attributable to [the indemnitee's] own negligence").

The Defendants' insistence that the Indemnity Clause is valid because it states that it applies only "to the extent permitted by law" is beside the point. The court and StarNet agree that the Indemnity Clause is valid, but the issue here is not validity *per se*, but applicability in these circumstances, *i.e.*, whether the Indemnity Clause operated here to transfer liability from the CTA to SWI; the court has found that it did not. The analysis and the result are the same whether the CTA's liability did not shift to SWI because the Indemnity Clause was "invalid" under the Act as applied, or because it *was* valid for complying with the Act by not permitting the transfer of liability for the CTA's own negligence to SWI. Finally, the court rejects SWI's contention (raised in reply) that adjudication of "StarNet's obligation to indemnify (as opposed to defend) must await the final resolution of the litigation pending in the circuit court." Again, SWI misses the mark. The CGL specifies the terms under which StarNet will *defend* SWI's indemnitee. The court has found that those conditions have not been met. The duty to defend is broader than the duty to indemnify and a finding that StarNet has no duty to defend the

CTA necessarily means that StarNet has no duty to indemnify the CTA either. *See Nautilus Ins. Co. v. 1452-4 N. Milwaukee Ave., LLC*, 562 F.3d 818, 824 (7th Cir. 2009).

### C. Duty to Defend SWI in Connection With the CTA's Counterclaim.

The CTA initially brought a counterclaim against SWI (in response to its third-party complaint) alleging breach of an indemnity agreement (Count I) and breach of contract for failure to provide insurance (Count II). On June 20, 2008 the CTA filed an amended counterclaim seeking compensation for property damage and alleging that SWI acted negligently (Count III) and is strictly liable for creating an unreasonably dangerous condition when it installed the subject elevator (Count IV) (the "Amended Counterclaim").

StarNet requests a declaration that it has no duty to defend SWI in the CTA's original counterclaim against SWI because Count I did not seek indemnity for SWI's negligence, but rather the CTA's negligence (contrary to the terms of the Indemnity Clause and in violation of the Act) and the CGL does not cover breach of contract claims (Count II). But StarNet made these arguments based on the original two-count counterclaim. Now, after SWI brought the Amended Counterclaim to StarNet's attention in its response brief, StarNet contends that the counterclaim issue is moot because the Amended Counterclaim does not incorporate the prior two counts about which StarNet sought declaratory relief. StarNet took no position on its duty to defend SWI with respect to the other two counts.[6]

---

[6] In reply StarNet urges that the CTA's filing of an Amended Counterclaim against SWI which failed to incorporate the indemnity and breach of contract counts alleged in the original counterclaim means that the CTA has abandoned those two counts and thus StarNet's motion for summary judgment on this issue is moot. *See* StarNet S.J. Reply 8-9. But StarNet presses this argument only in Reply and in response to SWI, which attached the Amended Counterclaim to its response. Though StarNet claims it was unaware

11

Proceeding on the theory that the Amended Counterclaim incorporated the prior counts, SWI argues that StarNet has a duty to defend SWI with respect to the entire Amended Counterclaim because two of the claims, those seeking damages against SWI for SWI's negligence and strict-liability, plainly fall within the scope of SWI's coverage under the CGL. *See Century Sur. Co. v. Demolition & Dev., Ltd.*, No. 04 C 7188, 2006 WL 163174, at *6 (N.D. Ill. Jan. 18, 2006) (citing *U.S. Fidelity & Guarantee Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 ("if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within potential coverage of the policy.")). StarNet does not address SWI's contention that the CGL covers the CTA's claims for SWI's negligence and strict liability, but those claims would find SWI liable for negligently damaging the CTA's property, *see* Amended Counterclaim, Count III, paragraph 8, and for property damage arising from SWI's control over an unreasonably dangerous condition. *See id.*, Count IV. The plain language of the CGL states that StarNet "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage.'" CGL 19. From the allegations of the Amended Counterclaim, then, the damage the CTA alleges it suffered because of SWI's acts creates liability for SWI that is covered or

---

of the Amended Counterclaim, filed on June 20, 2008, when it filed its motion for summary judgment on April 20, 2009, and the court has no reason to doubt this representation, consideration of the Amended Counterclaim is essential to a proper disposition of StarNet's motion and it should have therefore been included in StarNet's initial memorandum and exhibits to its statement of material facts. And though StarNet's argument that the first two counts of the prior Counterclaim have been dropped appears persuasive on its face, it is not clear from the Amended Counterclaim that the CTA intended to drop its first two claims (it styles the two counts in the Amended Counterclaim as Counts III and IV). And, in any case, the legal status of counts in the CTA's counterclaim is an issue for the Illinois state court that has jurisdiction over the Lewandowski Lawsuit and the related Third-Party Complaints; StarNet has not indicated that the Illinois court has deemed Counts I and II of the CTA's counterclaim abandoned. Accordingly, the court will determine StarNet's duty to defend SWI with the understanding that the Amended Counterclaim *includes* the two counts brought in the CTA's initial counterclaim.

potentially covered by the CGL, *see* CGL 32 ¶ 17, which means, in turn, that StarNet has a duty to defend and indemnify SWI for these two claims.

Moreover, as "the duty to defend extends to . . . accompanying claims not within policy coverage," *Century Sur. Co.*, 2006 WL 163174, at *6, where a *single* claim is "within *potential* coverage of" an insurance policy, *Fidelity*, 578 N.E.2d at 930 (emphasis added), StarNet has a duty to defend SWI for the entirety of the Amended Counterclaim including the two counts it contends the CTA abandoned. Of course, this holding assumes that the CTA still may properly pursue the two counts it asserted against SWI in the initial counterclaim, an issue to be resolved by the Illinois state court presiding over the Lewandowski Lawsuit.

Finally, as the court found that StarNet has a duty to defend SWI, reaching the issue of whether StarNet must ultimately indemnify SWI for any liability it incurs after the resolution of the Amended Counterclaim is premature. *See Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1047 (7th Cir. 1987).

## IV. CONCLUSION

StarNet's Motion for Summary Judgment is granted in part and denied in part. The CTA's Motion for Summary Judgment is denied. SWI's Motion for Judgment on the Pleadings is granted in part and denied in part. The case is terminated.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: March 30, 2010